# Illinois Official Reports

## Appellate Court

---

### *Doe v. University of Chicago Medical Center*,
### 2015 IL App (1st) 133735

---

| | |
|---|---|
| Appellate Court Caption | JANE DOE and JOHN DOE, Plaintiffs-Appellants, v. THE UNIVERSITY OF CHICAGO MEDICAL CENTER, a/k/a University of Chicago Hospitals, and THE UNIVERSITY OF CHICAGO, Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-3735 |
| Filed | April 16, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-1605; the Hon. Jeffrey Lawrence, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Scott D. Lane and Michael D. Elkin, both of Chicago, for appellants.<br><br>Matthew L. Johnson and Garrett L. Boehm, Jr., of Chicago, for appellees. |
| Panel | JUSTICE ELLIS delivered the judgment of the court, with opinion.[*]<br>Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment and opinion. |

---

[*]This case was recently reassigned to Justice Ellis.

**OPINION**

¶ 1    Plaintiff Jane Doe was beaten and raped by an unknown assailant as she walked to her car after her night shift at the hospital operated by defendants, the University of Chicago Medical Center and the University of Chicago. Plaintiff sued defendants for negligence and breach of contract, alleging they had voluntarily and contractually assumed a duty to provide transportation or an escort to and from plaintiff's parked vehicle, as well to provide security desks manned by security personnel at all hours of the night that could call for such transportation or escort. She further alleged that, on the night she was attacked, she first tried to request these services at the security desk in the lobby of defendants' Goldblatt Pavilion, but it was unmanned, prompting plaintiff to set out alone on foot to reach her vehicle.

¶ 2    Defendants filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)) and attached an affidavit of defendants' director of public safety and security. The trial court granted defendants' motion to dismiss with prejudice. The court first held that defendants did not breach their promise to provide certain security services because plaintiff did not request them on the night in question, despite having the option of using a cell phone, a security phone, or an emergency phone outside the building to do so. Second, the court held that defendants owed no duty to plaintiff with regard to a criminal assault by a third person off of defendants' premises. Plaintiff now appeals. For the reasons that follow, we reverse and remand.

¶ 3                               I. FACTUAL BACKGROUND
¶ 4    A section 2-619(a)(9) motion to dismiss admits all well-pleaded allegations in the complaint and, for purposes of this appeal, we also take them as true. *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 486 (2001); *Fireman's Fund Insurance Co. v. SEC Donohue, Inc.*, 176 Ill. 2d 160, 161 (1997). Plaintiff's pertinent factual allegations follow.

¶ 5    Defendants operated a hospital in Chicago, where plaintiff had been employed as a phlebotomist since May 2008. Several months after she started, defendants asked plaintiff to work the night shift. Defendants knew that the area around the hospital was unusually dangerous and that a significant amount of violent crime occurred around that area. Defendants operated a program called SafeRide, which was a service designed to provide its faculty, staff, and students with safe transportation in the area during late night and early morning hours within a designated area. That area included all of Midway Plaisance, though it was not defendants' property. Defendants also offered a security personnel escort service, whereby defendants' security personnel, upon request, would walk users to their destination within a designated area that included the park in the 1100 block of 59th Street and all of Midway Plaisance.

¶ 6    In exchange for plaintiff's agreement to work the night shift, defendants "promised they would provide personnel and services to get her to and from her parked vehicle safely." They "expressly promised" her that: (1) there would be adequate parking in close proximity to the hospital; (2) the areas where plaintiff parked and walked to and from her vehicle would be well lit; (3) defendants would provide SafeRide and escort services to transport plaintiff to and from her parked vehicle; and (4) defendants would provide security desks manned by security personnel at all hours of the night so that plaintiff could request said services. These promises were made on numerous occasions during plaintiff's employment by several of defendants'

- 2 -

agents and employees, including Robin Kurjurna-Mills, Alicia Dillard, and John Walker, who were all supervisors in the phlebotomy department. Defendants voluntarily made these promises and voluntarily offered these services because they recognized the services were necessary to protect their employees who worked at night. Plaintiff agreed to work the night shift in reliance on these promises.

¶ 7    Defendants specifically instructed plaintiff to obtain transportation to her vehicle by approaching security personnel at any security desk and asking the personnel to call for a SafeRide pick-up and drop-off. There was a security desk in the lobby of defendants' Goldblatt Pavilion. According to plaintiff, defendants promised to provide security personnel stationed at security desks, including the security desk in the lobby of the Goldblatt Pavilion, at all times during the night to call for SafeRide transportation. To obtain a security personnel escort to and from her vehicle, defendants specifically instructed plaintiff to approach security personnel at any security desk, which included the security desk in the Goldblatt Pavilion.

¶ 8    On February 16, 2009, plaintiff drove to work and parked her vehicle on Midway Plaisance, which was several blocks from defendants' hospital, because no closer and safer parking spots were available. At approximately 9 p.m., plaintiff wanted assistance in reaching her vehicle. As she had been instructed to do, plaintiff went to the security desk in the lobby of Goldblatt Pavilion, but there were no security personnel at the desk as defendants had promised. Nor were there security personnel in the lobby, the nearby hallways, or anywhere in the vicinity. Plaintiff went to use the restroom, hoping that when she returned there would be security personnel at the desk. She returned and waited for 10 more minutes, but no security personnel arrived. Concluding that no security personnel were available to assist her, she left the building alone. As plaintiff was walking through an inadequately lit public park on the way to reach her vehicle, she was beaten and raped by an unknown individual.

¶ 9                            II. PROCEDURAL BACKGROUND
¶ 10                                   A. Complaint
¶ 11    The fifth amended complaint seeks relief in four counts. In count I, plaintiff seeks damages for defendants' alleged negligence. Plaintiff alleges that defendants voluntarily assumed a duty to provide personnel and services to get her safely to and from her vehicle when she worked the night shift but failed to perform that voluntary undertaking. In count III, plaintiff alleges that defendants' promises to plaintiff resulted in a contract that defendants breached when they failed to provide these safety services on the night in question. Counts II and IV are loss-of-consortium counts brought by plaintiff's husband, John Doe, based on the same theories of negligence and breach of contract, respectively.[1]

¶ 12               B. Defendants' Section 2-619(a)(9) Motion to Dismiss
¶ 13    Defendants filed a motion to dismiss the complaint under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)). Defendants first argued that they did not breach their duty to plaintiff–arising either under a voluntary undertaking or contract–because plaintiff did not request SafeRide transportation or otherwise engage defendants' security

_____

[1]Although both Jane Doe and her husband, John Doe, are plaintiffs in this action, for the sake of clarity we shall use the term "plaintiff" solely to refer to Jane Doe. Likewise, for the sake of brevity, we will refer to the fifth amended complaint as simply the "complaint."

services on the night in question, despite having the opportunity to do so. Defendants asserted that plaintiff's allegations that defendants had a legal and contractual duty to man the security desk at the Goldblatt Pavilion security desk 24 hours a day were fatally flawed because "there is no legal duty to do so and no promise was made to her in such a regard." As a second basis for dismissal, defendants argued that they had no duty to protect plaintiff from the criminal acts of an unknown third-party that occurred off their property.

¶ 14   In support of their first argument, defendants attached the affidavit of Rodney Morris, the director of public safety and security at the University of Chicago Medical Center. Mr. Morris was then deposed by plaintiff. Plaintiff included a copy of Mr. Morris's deposition in her response to the motion to dismiss.

¶ 15                                C. Rodney Morris's Testimony

¶ 16   Morris testified that there are 24 interconnected buildings that make up the University of Chicago's medical complex. The hospital has security personnel working 24 hours a day, 7 days a week, including on February 16, 2009. The building where plaintiff visited the security desk on the night in question–Goldblatt Pavilion–is one of five buildings located at "the back end of the hospital." During the time period at issue (2009) and the time shift at issue (3 p.m. to 11 p.m.), there was only one roving security officer on duty in those five buildings. That officer could respond to any calls for service but otherwise was spread around those five buildings without a specific assignment at a specific time.

¶ 17   Morris testified that Goldblatt Pavilion has one security desk. Since 1990 and continuing through the time of plaintiff's attack in 2009, the security desk at the Goldblatt Pavilion was manned only from 7:30 a.m. to 3:20 p.m. on Monday through Friday, not around the clock as plaintiff alleged, in her complaint, she had been promised. Goldblatt Pavilion has a house phone in the corridor directly behind the security desk. Moreover, without having to go outside, a person in Goldblatt Pavilion could walk to either the adult emergency room entrance or the Bernard Mitchell entrance, both of which had security desks manned at all hours. (The distance to those other security desks, or the time it would take to reach them, is not found in the record.)

¶ 18   Morris described defendants' SafeRide and escort services. He stated that SafeRide transportation services were available after 9 p.m. He described SafeRide as a strictly on-call service: "That means you would call in. We ask you where you are, where you are going." To use the SafeRide service, an employee would pick up a phone, call the medical communications center, and request use of the service. Because there was only one SafeRide bus, the employee might have to wait for service if the bus was already transporting someone else.

¶ 19   As for the escort service, Morris stated that it was provided in conjunction with the University of Chicago police. An employee who wanted to use the service could pick up a phone and call the public safety dispatch center to request an escort. A police officer would arrive and follow the person to his or her destination.

¶ 20   Morris stated that the above information about defendants' SafeRide and escort services was disseminated to employees at the new employee orientation. Each employee was given a "common sense pamphlet," which explained how to call for SafeRide and escort services. In addition, extra "common sense pamphlets" were left at various entry points to the medical center. The information was also available online. Furthermore, the house phone in the

Goldblatt Pavilion lobby had a placard above it that listed the phone number for the public safety dispatch center.

¶ 21 Morris admitted that he did not have any personal knowledge as to whether plaintiff received this information. He also did not know whether plaintiff was promised that the Goldblatt Pavilion security desk would be manned at all hours of the night, as she alleged in her complaint, nor did he know what plaintiff might have been promised about parking availability or about lighting conditions on the way to her parked car.

¶ 22 Morris additionally stated that outside the entrance to the Goldblatt Pavilion, there was an emergency call box that had been put in place by the University police department. The box was labeled with the words "emergency phone" in big block letters and contained a red button. Once a person pushed the button, the speaker on the box would turn on and connect the person with the University police department. Morris stated that a person could use that call box to request SafeRide or escort services, although it was not the preferred method of doing so.

¶ 23 D. Plaintiff's Response and Affidavit

¶ 24 In response to defendants' section 2-619 motion to dismiss, plaintiff argued that Morris's affidavit was improper support for a section 2-619 motion because it merely offered to contradict the factual allegations in the complaint. She argued that neither defendants' motion to dismiss nor Morris's affidavit asserted any "affirmative matter" that defeated her claims as required in a section 2-619 motion. Plaintiff additionally argued that Morris's affidavit and deposition actually *supported* her claim because Morris confirmed that the Goldblatt Pavilion security desk was not manned on the night in question, and he admitted that he had no personal knowledge of what plaintiff had been promised in regards to safety services.

¶ 25 Plaintiff also attached her own affidavit. In that affidavit, plaintiff first swore that all of the allegations in her fifth amended complaint were true and accurate. Second, she reaffirmed that she was promised by multiple staff members in defendants' employ that all security desks, including the Goldblatt Pavilion security desk, would be manned with security personnel at all times during the night shift. Third, she swore that multiple staff members instructed her that in order to obtain SafeRide transportation or a security escort during the night shift, she should approach the security personnel manning a security desk and request the service that she desired.

¶ 26 Fourth and finally, plaintiff addressed an issue that was not mentioned in her complaint–the availability of phones, either her own cell phone or the university phones, to call for transportation or escort services. On this point, plaintiff testified as follows:

> "No one ever instructed me to use my cell phone or any University of Chicago Medical Center house phone to utilize the SafeRide program or security escort service. In fact, I was specifically instructed by Defendants' staff members not to call in order to request the use of either service."

¶ 27 E. Trial Court's Ruling

¶ 28 On July 31, 2013, the trial court heard arguments on defendants' section 2-619 motion to dismiss. Very early on in the hearing, the trial judge made it clear that he was treating this motion "as a motion for summary judgment *** because 2-619 is analogous to a motion for summary judgment."

¶ 29    Later, when discussing defendants' alleged promises to plaintiff that formed the allegations of a voluntary undertaking or contract, the court demanded proof in an evidentiary record, refusing to consider the allegations of the complaint:

"MR. LANE [plaintiff's counsel]: What I'm saying, Your Honor, is that [defendants] said to [plaintiff], if you work here, [plaintiff], we're going to provide you with parking that's in close proximity.

THE COURT: Where is that in the record?

MR. LANE: It's in the complaint.

THE COURT: Well, where is that in the record? Where is that in the evidentiary record?

***

MR. LANE: No, but the point is this–and we are the pleading stage, and our facts need to be taken as true–

THE COURT: No. No. We're not at the pleading stage here, sir. This is a motion for–this is a 2-619 motion ***."

¶ 30    Near the end of the argument, the trial court again noted that plaintiff had failed to establish an evidentiary record for the promises alleged in the complaint:

THE COURT: [I]t's clear to me–it's clear to me, Mr. Lane, that at this stage of the proceedings you are unable to show me a promise, anything which remotely approaches the scope that you're claiming in the complaint. It's not there. So what you need–

MR. LANE: Wait. In the complaint?

THE COURT: It's not there in the evidentiary record. ***

***

MR. LANE: The position that we have is that in this particular case[,] the University of Chicago promised that they would get her to and from her vehicle. This parking spot where she was was a couple of blocks–

THE COURT: Sir, that–that statement is simply not supported by the evidentiary record in this case."

¶ 31    The court ultimately ruled in favor of defendants on all counts, finding that plaintiff's claim of negligence based on a voluntary undertaking and her claim of breach of contract failed as a matter of law because plaintiff did not use a phone to request a ride or an escort and thus never triggered defendants' duty to provide security services. The court further found that defendants owed plaintiff no legal duty to protect her from an attack by a third party that occurred outside defendant's property boundaries.

¶ 32    Plaintiff moved for reconsideration. The court denied the motion, and this appeal followed.

¶ 33                                III. ANALYSIS

¶ 34    Plaintiff argues that the trial court erred in treating the section 2-619 motion as one for summary judgment and in demanding an inappropriate level of proof at the pleading stage. Plaintiff claims that, under the appropriate analysis for a section 2-619 motion, her allegations were sufficient to state causes of action for both breach of contract and negligence based on a voluntary undertaking, and that nothing put forward by defendants defeated those claims. She

further challenges the trial court's ruling that defendants owed plaintiff no duty under the common law to prevent a criminal attack by a third party that occurred beyond defendants' property.

¶ 35 We review *de novo* the trial court's dismissal of a complaint under section 2-619. *Cooney v. Rossiter*, 2012 IL 113227, ¶ 17. A motion to dismiss under section 2-619 admits the legal sufficiency of the complaint but asserts a defense that defeats it. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. When considering a section 2-619 motion, a court must accept as true all well-pleaded facts in the complaint, as well as any inferences that may reasonably be drawn in plaintiff's favor. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55; *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). Dismissal of a complaint under section 2-619 is appropriate only if the plaintiff can prove no set of facts that would support a cause of action. *In re Estate of Boyar*, 2013 IL 113655, ¶ 27.

¶ 36 A. "Affirmative Matter" Under Section 2-619(a)(9)

¶ 37 Defendants' motion was specifically based on subsection (a)(9), which permits dismissal where "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2012); see also *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003); *Patrick Engineering*, 2012 IL 113148, ¶ 31. The "affirmative matter" must be apparent on the face of the complaint or supported by affidavits or certain other evidentiary materials. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997). The defendant has the initial burden of establishing that the affirmative matter defeats the plaintiff's claim. *Id*. Once the defendant satisfies the burden of putting forward this "affirmative matter," the burden shifts to the plaintiff to demonstrate that the proffered defense is unfounded or requires the resolution of a material fact. *Id*. If the plaintiff fails to carry the shifted burden of going forward, the complaint will be dismissed. *Id*.

¶ 38 In *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 120-21 (2008), our supreme court described the "affirmative matter" a defendant must present under section 2-619(a)(9), to satisfy its initial burden, as:

"[A] type of defense that either negates an alleged cause of action completely or refutes crucial conclusions of law or conclusion of material fact unsupported by allegations of specific fact contained or inferred from the complaint *** [not] merely evidence upon which defendant expects to contest an ultimate fact stated in the complaint. [Citation.]" (Internal quotation marks omitted.)

¶ 39 Because the allegations of the complaint are taken as true, the "affirmative matter" presented by the movant must do more than refute a well-pleaded fact in the complaint. *Bucci v. Rustin*, 227 Ill. App. 3d 779, 782 (1992); *Longust v. Peabody Coal Co.*, 151 Ill. App. 3d 754, 757 (1986) (section 2-619 dismissal was improper where defendant merely attempted to negate the factual allegation upon which its liability rested). For example, in *Smith*, 231 Ill. 2d 111, the plaintiff sued for retaliatory discharge, claiming he was fired because he filed a worker's compensation claim against the defendant, a municipal park district. The defendant moved to dismiss under section 2-619(a)(9), claiming statutory tort immunity for a discretionary act. The defendant attached an affidavit that stated that the plaintiff was fired after refusing to take a drug test, in violation of park district policy, and that it was within the defendant's discretion to fire him for violating that policy. The plaintiff did not respond with a counter-affidavit. The supreme court held that the trial court erred in dismissing the complaint.

The court recognized that tort immunity could, under the proper circumstances, constitute "affirmative matter" defeating plaintiff's claim, but it held that a fact question remained in that case because the defendant's affidavit simply disputed the complaint's allegation that plaintiff was fired out of retaliation for filing a worker's compensation claim. Because that affidavit did nothing more than contradict a well-pleaded allegation, it was an improper use of section 2-619, and thus the burden never shifted to the plaintiff to counter the defendant's evidence. *Id*. at 121-22.

¶ 40    This court has described the difference between proper section 2-619 motions and improper ones as the difference between "yes but" motions and "not true" motions. *Howle v. Aqua Illinois, Inc.*, 2012 IL App (4th) 120207, ¶ 34; *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 35; *Winters v. Wangler*, 386 Ill. App. 3d 788, 792 (2008). A proper section 2-619 motion is a "yes but" motion that admits both that that complaint's allegations are true and that the complaint states a cause of action, but argues that some other defense exists that defeats the claim nevertheless. *Howle*, 2012 IL App (4th) 120207, ¶ 34; *Reynolds*, 2013 IL App (4th) 120139, ¶ 35; *Winters*, 386 Ill. App. 3d at 792. That defense may be one of the enumerated bases contained within section 2-619–such as the running of a limitations period or the existence of a prior pending action–or it may fall within the catch-all of "other affirmative matter," such as immunity from suit or plaintiff's lack of standing, under subsection (a)(9). See *Smith*, 231 Ill. 2d at 121; *Reynolds*, 2013 IL App (4th) 120139, ¶ 33; 735 ILCS 5/2-619(a) (West 2012).

¶ 41    On the other hand, a motion that attempts to merely refute a well-pleaded allegation in the complaint is a "not true" motion that is inappropriate for section 2-619. *Howle*, 2012 IL App (4th) 120207, ¶ 34; *Reynolds*, 2013 IL App (4th) 120139, ¶ 35; *Winters*, 386 Ill. App. 3d at 792. A "not true" motion at the pleading stage, in essence, serves as nothing more than an answer that denies a factual allegation and is not a basis for dismissal. *Howle*, 2012 IL App (4th) 120207, ¶ 36. Such a fact-based motion is appropriate for a summary judgment motion or for resolution at trial. *Id*. ¶ 37; *Reynolds*, 2013 IL App (4th) 120139, ¶ 34 ("[w]here a defendant seeks to address the complaint's factual allegations, a summary judgment motion *** is the proper vehicle"); *Barber-Colman Co. v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1077 (1992) ("section 2-619 motions should not be used to attack the factual basis of the claim itself; if such an attack is to be made, it should be by a summary judgment motion").

¶ 42    The trial court, in treating the instant section 2-619 motion as a motion for summary judgment, noted the analogy between the two motions. We agree that a motion for involuntary dismissal under section 2-619 and a motion for summary judgment share similarities and may, in certain circumstances, be functionally equivalent. *Epstein*, 178 Ill. 2d at 383; *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). With each motion, if the movant puts forth sufficient evidence to entitle it to judgment as a matter of law, the burden shifts to the nonmovant to counter that evidence, and if the nonmovant is unable to do so, judgment as a matter of law in favor of the movant is warranted. In each motion, the existence of a question of material fact will preclude judgment as a matter of law. Likewise, the standard of review on appeal for each is *de novo*. *Epstein*, 178 Ill. 2d at 383; *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993).

¶ 43    But there are critical differences between a section 2-619 motion and a motion for summary judgment. Most importantly, a party may not rely solely on her complaint to oppose a properly supported motion for summary judgment. *Forsberg v. Edward Hospital & Health*

*Services*, 389 Ill. App. 3d 434, 441 (2009). In contrast, as we have noted above, a section 2-619 motion admits the allegations of the complaint, as well as admitting that the complaint states a viable cause of action. *Patrick Engineering*, 2012 IL 113148, ¶ 31; *Sandholm*, 2012 IL 111443, ¶ 55. If defendant's evidence in support of a section 2-619(a)(9) motion does nothing more than refute the well-pleaded allegations of the complaint, the complaint trumps that evidence, and dismissal is improper. *Smith*, 231 Ill. 2d at 121. "Section 2-619(a)(9) is not a proper vehicle to contest factual allegations; nor does it authorize a fact-based 'mini-trial' on whether plaintiff can support his allegations." *Reynolds*, 2013 IL App (4th) 120139, ¶ 42.

¶ 44 With these principles in mind, we turn to the issues before us.

¶ 45                     B. Dismissal of Voluntary Undertaking and Contract Claims Based on
Plaintiff's Failure to Request Security Services Offered by Defendants

¶ 46 The trial court's first basis for dismissal was that defendants did not breach any alleged duty to provide security services–whether it arose under contract or via a voluntarily assumed duty–because plaintiff did not request those services through any of the phones available to her. As we understand the trial court's ruling, the court applied this reasoning to both claims raised by plaintiff, the contract claim and the negligence/voluntary undertaking claim. The parties have not suggested otherwise.

¶ 47 We agree that it is logical to consider these two claims in tandem for the purposes of this first issue, because for both claims, the relevant question is the scope of defendants' promise to plaintiff. Plaintiff's negligence claim, premised on a duty voluntarily assumed by defendants, is defined by and limited to the scope of that voluntary undertaking–that is, it is limited to the scope of the promise made by defendants and relied upon by plaintiff. *Bell v. Hutsell*, 2011 IL 110724, ¶ 12. Likewise, plaintiff's contract claim, premised on an oral contract, is defined by what terms, precisely, defendants offered and plaintiff accepted. *Johannesen v. Eddins*, 2011 IL App (2d) 110108, ¶ 22. Plaintiff is alleging the same promise under either theory of liability. Thus, it made sense for the trial court to consider these issues together, and we will do the same. See *Bourgonje v. Machev*, 362 Ill. App. 3d 984, 1000-01 (2005) (noting the convergence of contract and negligence claims when the case involves voluntary promises made by defendant to reliant plaintiff).

¶ 48 First, we agree with plaintiff that the trial court erred in treating this case as a motion for summary judgment. The court repeatedly demanded an evidentiary foundation for plaintiff's claim that defendants promised all of the things plaintiff alleged in the complaint–proper lighting, close parking, and most importantly, the promises surrounding the provision of escort and transportation services. When plaintiff's counsel reminded the court that the allegations of the complaint should be taken as true, the judge disagreed, stating, "We're not at the pleading stage," and demanded proof from a nonexistent record. The judge told plaintiff's counsel "that at this stage of the proceedings you are unable to show me a promise, anything which remotely approaches the scope that you're claiming in the complaint."

¶ 49 Plaintiff, at the pleading stage and faced with a section 2-619 motion, was clearly not required to show a promise beyond what she alleged in her complaint. At most, she was required to counter the evidence put forth in the Morris affidavit and deposition testimony–assuming it was proper "affirmative matter" under section 2-619 in the first place.

¶ 50    In their submission before this court, defendants make little effort to defend the trial court's consideration of the motion as one of summary judgment. They argue, instead, that even if the trial court employed an incorrect standard, its ultimate conclusion was correct–the case was properly dismissed under section 2-619(a)(9)–and this court may affirm on any basis contained in the record. Defendants are correct that we may affirm the trial court's ruling, even if we disagree with its reasoning, as long as a sufficient basis appears in the record. *In re Marriage of Murphy*, 359 Ill. App. 3d 289, 300 (2005). Thus, though we disagree with the manner in which the trial court disposed of this case, we will review the arguments to determine if the trial court ultimately reached the correct result in dismissing the complaint.

¶ 51    In considering whether this case was properly dismissed, we must decide whether the evidence put forth by defendants constituted "affirmative matter" under section 2-619(a)(9) that would defeat plaintiff's negligence and contract claims and, if it did, whether plaintiff properly countered that evidence through her affidavit. Defendants' evidence consisted of two points: (1) the Goldblatt Pavilion security desk was not manned at night during any part of plaintiff's employment in 2008 and 2009 and, in fact, has not been manned at night since 1990; and (2) plaintiff did not request either an escort or SafeRide transportation, despite the fact that she could have done so via a security phone near the Goldblatt security desk or through an emergency phone just outside Goldblatt or for that matter with her own cell phone.

¶ 52    We hold that this evidence did not constitute "affirmative matter" within section 2-619(a)(9). Defendants argue that the fact that the security desk in Goldblatt has not been manned at night since 1990 proves that nobody in defendants' employ would have promised plaintiff, in 2008, that it would be manned all night–or, in defendants' words during the proceedings below, it proved that "no promise was made to her in such a regard." But that does not change the fact that plaintiff alleges that defendants *did* make such a promise orally, an allegation that we must accept as true at the pleading stage. *Patrick Engineering*, 2012 IL 113148, ¶ 31. Defendants' evidence, at best, did nothing more than contradict a well-pleaded allegation of the complaint and did not constitute "affirmative matter" under section 2-619(a)(9).

¶ 53    Likewise, defendants' reference to the availability of university phones, or plaintiff's own personal cell phone, to request security services did not constitute "affirmative matter" because that evidence merely refuted plaintiff's well-pleaded allegations of the promise made to her by defendants and the terms of that promise. As noted previously, the complaint alleged that defendants "specifically instructed" plaintiff to obtain an escort or transportation to her vehicle by requesting it from security personnel at any security desk, and they promised that the Goldblatt security desk (indeed, all security desks) would be manned around the clock. The complaint says nothing about telephonic requests, one way or the other.

¶ 54    Simply put, plaintiff's well-pleaded facts alleged that plaintiff was explicitly directed to make an in-person request from security personnel at a security desk, while defendants claim that she was also permitted to do so by phone. A section 2-619 motion is not the proper vehicle to argue defendants' version of the alleged "promise" against plaintiff's well-pleaded version. See *Reynolds*, 2013 IL App (4th) 120139, ¶ 34 ("an affirmative matter is not the defendant's version of the facts as such a basis merely tends to negate the essential allegations of the plaintiff's cause of action"). Thus, a question of material fact existed as to the scope of the voluntary undertaking assumed by defendants. See *Shea v. Preservation Chicago, Inc.*, 206 Ill. App. 3d 657, 663 (1990) (noting that scope of voluntary undertaking depends on facts of

particular case). Likewise, a question of material fact remained as to the terms of the oral contract between plaintiff and defendants. See *Johannesen v. Eddins*, 2011 IL App (2d) 110108, ¶ 22 (reversing dismissal under section 2-619; "The existence of an oral contract, its terms, and the intent of the parties are questions of fact. *** The existence of an alleged oral contract requires the presentation of testimony, not mere argument by attorneys.").

¶ 55 Because this evidence did not constitute "affirmative matter" under section 2-619(a)(9), the burden never shifted to plaintiff to counter this evidence. See *Smith*, 231 Ill. 2d at 121. We also find, however, that even if the burden had shifted, plaintiff sufficiently countered defendants' evidence with her own affidavit stating that, not only was she never told to use a phone to request security services, but she was specifically told by defendants' staff members *not* to use a phone. Defendants did not attack the sufficiency of plaintiff's affidavit before the trial court, nor did they challenge it in their brief before this court. In oral argument, defendants' counsel claimed that the affidavit failed to comply with Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013). With neither the trial court nor plaintiff having had the opportunity to consider this argument, we will not address it, either. *McCann v. Presswood*, 308 Ill. App. 3d 1068, 1073 (1999); Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) ("[p]oints not argued [in appellant's or appellee's brief] are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing"). Thus, even had the burden of production shifted to plaintiff on this section 2-619 motion, plaintiff's affidavit created a question of material fact about the terms and scope of defendants' promise to plaintiff. In either event, the trial court erred in dismissing the contract and negligence counts based on this evidence.

¶ 56 Because a genuine issue of material fact exists regarding the scope and terms of defendants' promise in this case, we find the case law cited by defendants to be inapposite. In *Lewis v. Razzberries, Inc.*, 222 Ill. App. 3d 843 (1991), the plaintiff's decedent left the defendant's tavern and was shot to death in an unmarked parking lot off the defendant's premises. There was no dispute as the scope of defendant's voluntary undertaking–the defendant tavern admitted that it had a policy of escorting female patrons, upon request, to their parked cars. Nor was there any disagreement over the fact that neither plaintiff's decedent nor her friend ever requested an escort before leaving on the night in question. Deposition testimony had settled both of those issues. The court thus affirmed summary judgment because "[plaintiff's decedent] left the premises without requesting an escort after the bartender's offer to provide one." *Id*. at 851. Here, in contrast, there is a question of material fact as to what, precisely, plaintiff was instructed to do in order to secure defendants' escort or transportation services. We cannot say, as a matter of law, that plaintiff failed to request an escort or transportation from defendants, because she alleges in her complaint that she did–or at least that she did precisely what defendants instructed her to do to make such a request–but she was prevented from obtaining it.

¶ 57 Likewise, we are not persuaded by defendants' reliance on *Jackson v. Shell Oil Co.*, 272 Ill. App. 3d 542 (1995), where a gas station attendant who typically worked within a locked booth was shot by an unknown assailant when he left that booth to use the outside bathroom. The plaintiff argued that the defendant was negligent in failing to provide a bathroom within the locked booth, so that he would never have to leave it during his work shift. The voluntary undertaking in that case, however, was merely providing a locked attendant's booth and nothing more–the defendants had not promised an escort to the bathroom, nor had they guaranteed the plaintiff's safety in travelling outside the locked booth. Applying the clear-cut

- 11 -

principle that the voluntary undertaking of a duty is limited to the scope of that undertaking, the court noted that the defendant could be liable for any negligence that occurred within the scope of that undertaking–for example, if the lock on the booth had malfunctioned–but held that the defendant was not required to volunteer additional services beyond that undertaking. *Id*. at 550. Because, in the instant case, a question of material fact exists concerning the scope of the alleged voluntary undertaking assumed by defendants, *Jackson* does not assist defendants.

¶ 58     By no means should our decision be misconstrued as criticizing defendants' evidence on this issue. Defendants' claim that plaintiff could have used her own phone or a nearby university phone to request security services may be a powerful argument in their favor. We emphasize that we find this case at the pleading stage. Plaintiff's deposition has not been taken. Virtually no discovery has taken place. At this stage, we must accept as true plaintiff's well-pleaded allegations that she was explicitly told that she must make an in-person, and *only* an in-person request for such services.

¶ 59                 C. Defendants' Duty to Prevent Off-Premises Attacks by Third Parties

¶ 60     The trial court's second basis for dismissal of the negligence counts was that "there is no duty owed to the [p]laintiff for an attack which occurred outside the boundaries of the premises owned by the defendants." That reasoning, however, is not applicable here, where defendants' alleged duty is premised on a voluntary undertaking, which is limited not by property boundaries but by the scope of the voluntary undertaking assumed by defendants. *Bell*, 2011 IL 110724, ¶ 12. Indeed, in this case, plaintiff alleges that defendants' assumed duty *did* extend beyond the boundaries of defendants' property to include the responsibility for safe passage through the area where plaintiff was attacked.

¶ 61     For the same reason, defendants' citation to *Leonardi v. Bradley University*, 253 Ill. App. 3d 685 (1993), does not advance its position. That case, involving the rape of a student while at a fraternity party in or around the defendant's campus, did not involve a theory of negligence premised on a voluntary undertaking, as in this case.

¶ 62     We hold that the trial court's second basis for dismissal was error as well.

¶ 63                                         IV. CONCLUSION

¶ 64     For the foregoing reasons, we reverse the trial court's dismissal of each count of the fifth amended complaint and remand for further proceedings.

¶ 65     Reversed and remanded.