2024 IL App (2d) 210300-U
No. 2-21-0300
Order filed June 4, 2024

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| MALLORY GRAY, | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 16-CH-746 |
| | ) | |
| CHRISTOPHER HOPP, | ) | Honorable |
| | ) | Michael J. Chmiel, |
| Defendant-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE McLAREN delivered the judgment of the court.
Justices Birkett and Kennedy concurred in the judgment.

**ORDER**

¶ 1     *Held*:  (1) Trial court erred in dismissing plaintiff's amended complaint pursuant to section 2-619 because neither the doctrine of *res judicata* nor the general release contained in parties' marital settlement agreement was an affirmative matter that barred plaintiff's causes of action; (2) trial court's dismissal of plaintiff's motion to compel discovery could not be found to be an abuse of discretion where plaintiff's contention was undeveloped; (3) because dismissal of plaintiff's amended complaint is reversed, trial court's award of Supreme Court Rule 137 sanctions is vacated; (4) plaintiff's request for remand to a different trial judge is deficient and found to be forfeited.

¶ 2     Plaintiff, Mallory Gray, appeals from the trial court's orders: (1) dismissing with prejudice her amended verified complaint, (2) dismissing her motion to compel discovery, and (3) awarding

sanctions pursuant to Supreme Court Rule 137 (eff. Jan. 1, 2018) to defendant, Christopher Hopp. We affirm in part, reverse in part, vacate in part, and remand.

¶ 3                                    I. BACKGROUND

¶ 4     The marriage of Gray and Hopp was dissolved in September 2014. The judgment of dissolution incorporated a marital settlement agreement ("MSA") in which Gray and Hopp "voluntarily waived their rights to further discovery relative to the wealth, property, estate, and income of the other." Each party was to be awarded the personal property in his or her possession with the exception of missing items placed on an extensive four-page list created by Gray. Hopp was to return any items from the list that he possessed and were Gray's property; items on the list that were Hopp's property or joint marital property were to be split equitably.

¶ 5     Further, the parties agreed:

> "Except as otherwise provided in this Agreement, each of the parties hereto covenants and agrees that each such party shall have and retain sole and exclusive right, title and interest, respectively, in and to each and all of the property in his or her respective possession or under his or her respective control upon the date of this Agreement, including in said property all choses in action, real estate, personalty, interests as beneficiaries of trusts, pensions or retirement or profit-sharing plans, checking and savings accounts, royalties, bonds, stocks and securities."

The MSA was "predicated on the full and complete mutual waiver of discovery made by each of the parties to the other relative of [*sic*] their respective sources of income both earned and unearned, and of their respective assets and liabilities." The MSA also contained a "MUTUAL AND GENERAL RELEASE" that provided:

"To the fullest extent by law permitted to do so, and except as herein otherwise provided, each of the parties does hereby forever relinquish, release, waive and forever quitclaim and grant to the other***all rights of support, maintenance, dower, inheritance, decent [*sic*], distribution. community interest and all other right, title, claim, interest, and estate as HUSBAND and WIFE, widow or widower, or otherwise by reason of the marital relations existing between the said parties hereto, under any present or future law, or which he or she otherwise has or might have or be entitled to claim in, or against the-property and assets of the other, real, personal or mixes [*sic*], or his or her estate, whether now owned or hereafter in any manner acquired by the other party, and whether in possession or in expectancy, and whether vested or contingent, and each party further covenants and agrees for himself or herself *** for the purpose of enforcing any or all of the rights specified in and relinquished under this paragraph; and further agrees that in the event any suit shall be commenced this release, when pleaded, shall be and constitute a complete defense to any such claim or suit or instituted by either party hereto ***."

¶ 6 In September 2016, Gray filed a six-count complaint against Hopp, with counts alleging assault, battery, false imprisonment, intentional infliction of emotional distress, conversion, and seeking injunctive relief, based mostly on events that occurred during the marriage, including multiple instances of forced, non-consensual sexual activity. In Count IV, alleging intentional infliction of emotional distress, Gray alleged that Hopp possessed "explicit sexually graphic videos and/or photographs" of her, "some of which were taken with neither the knowledge [n]or consent of [Gray]." Gray alleged that she knew that Hopp was "capable and would use such videos against her in a revengeful way because he used the same type of video of him and his ex-girlfriend to in fact harass [Gray]" in the early days of their marriage. In Count, VII, seeking estoppel and

injunctive relief, Gray alleged that Hopp possessed "numerous videos of Plaintiff and Defendant engaging in sexual intercourse or otherwise [*sic*] sexual acts," including videos that Gray had never seen before and videos, the making of which and the acts depicted therein she had not consented to. Gray attached as exhibits an e-mail and a transcript from Hopp's court martial from the Coast Guard (involving charges of embezzlement and sexual assault) that referenced "possible hours upon hours" of such videos. Gray sought to enjoin Hopp from distributing such videos and to require him to turn over to the trial court the originals and all copies of such videos "for proper return to [Gray] or oversee the manner of its destruction."

¶ 7     Hopp filed a motion to dismiss the complaint pursuant to section 2-619 of the Code of Civil Procedure ("Code") (735 ILCS 5/2-619 (West 2016)), arguing that all allegations in the complaint related to events that occurred before the dissolution of the marriage and that "the parties therefore resolved all issues emanating from matters occurring during the marriage of the parties." As to Count VI, Hopp argued that the existence of the videos/photos was discussed directly with the trial court on several occasions during the dissolution proceedings. Any attempt to obtain copies of these materials would be an attempt to re-litigate the property distribution of the dissolution judgment. Thus, Gray's action was barred by the prior judgment.

¶ 8     The trial court granted without prejudice the motion to dismiss, finding that Gray's allegations were "based upon what happened before the parties agreed to settle such issues through the dissolution of their marriage through previous proceedings." The court denied Gray's motion to reconsider but granted leave to file an amended petition.

¶ 9     Gray filed a notice of appeal to this court, then changed attorneys. Hopp timely filed in the circuit court a motion for sanctions pursuant to Rule 137, which returned jurisdiction to the trial court. The trial court subsequently granted a joint motion to set dates for a pretrial settlement

conference and continued the motion for sanctions. Between October 2017 and June 2018, the parties engaged in court-authorized efforts to settle. In June 2018, the trial court suggested to Gray's substitute counsel that he could file an amended complaint or dismiss the case and file a new complaint. The parties also attempted to reach an agreement on a protocol for the trial court to perform an *in camera* review of the flash drive.

¶ 10    Gray then sought leave to file an amended complaint. After briefing by the parties and a hearing, the trial court granted leave, and Gray filed a three-count amended verified complaint. Gray alleged that Hopp's court martial proceedings began in March 2014. Allegations in the court martial included charges of abuse of Gray and another woman. In May 2015, after the 2014 judgment of dissolution had been entered, Hopp's court martial counsel advised the military judge that he had "possible hours upon hours of video," including graphic images and recordings of sexual activity between Gray and Hopp and Hopp with other women, that they intended to use in Hopp's defense that the sex was consensual. Gray recalled several occasions when Hopp sought to record the two of them engaged in sexual activity, but Gray did not know whether Hopp preserved, deleted, or modified these recordings after they were recorded.

¶ 11    Gray alleged that Hopp presented three clips of sexual activity between Gray and Hopp, totaling roughly twenty minutes in length, to the court martial judge, who remarked that, in one of the videos, Gray's speech was slurred and that it was unclear whether Gray and/or Hopp was under the influence of alcohol or other intoxicants. Gray alleged that she saw that clip during the court martial trial and noted a date stamp on the video; the date fell within the period in which she had been pregnant, and she "was adamant during her pregnancy that she did not and would not drink alcohol or ingest any other intoxicants for fear of damaging the fetus." She alleged that she was too intoxicated or impaired to have consented to the sexual activity depicted or to the videotaping

of that activity; further, since she was pregnant at that time, she believed that she had been unknowingly plied with some sort of intoxicant that robbed her of her ability to consent to the sexual activity. Gray believed that she may have recognized one of the other clips but not the third.

¶ 12    Hopp never did turn over the "hours upon hours" of videos in the court martial proceedings, and Gray was unsure if Hopp's counsel had returned them to Hopp. Other than the acknowledged occasions on which Hopp sought to record the two of them engaged in sexual activity, Gray "was unaware of and had no knowledge that Hopp had recorded, or caused someone else to record, 'hours upon hours' of scenes of Hopp and Gray engaged in sexual activity," and she never consented to such video recording. Further, during the pendency of the divorce proceedings, including the negotiation of the mutual and general release provision of the MSA, Gray was unaware and had no knowledge that Hopp had recorded, or caused someone else to record, the "hours upon hours" of sexual activity between them or that Hopp had maintained or modified the videos of the several instances in which he sought to record the two of them engaged in sexual activity and had no knowledge of the existence of such recordings.

¶ 13    Gray alleged that Hopp, through trial counsel, had acknowledged the existence of a flash drive containing "an exact duplicate of the universe of the 'hours upon hours' of videos" and that counsel possessed the drive. Hopp had refused her demands to view the contents of the drive as well as her request that Hopp identify the devices upon which the images were recorded. Hopp had also refused Gray's request that he:

> "confirm that (a) other than the Flash Drive, no other copies of these images exist anywhere; (b) the images on the Flash Drive have not been altered from the form in which

they were first recorded; (c) Hopp has not disseminated any of the images to any third person; and (d) the images on the Flash Drive exist only on the Flash Drive."

¶ 14    In Count I, Gray alleged that Hopp battered her in that he engaged in sexual activity with her without her consent and/or when, due to Hopp plying her with alcohol, rendered her too intoxicated to be able to give Hopp consent to engage in sexual activity. Gray charged intentional infliction of emotional distress in Count II, alleging that, when Hopp battered Gray and engaged in repeated sexual activity with her without her consent, he intentionally or recklessly inflicted, or knew there was a high probability that such conduct would inflict, severe emotional distress upon her. Similarly, Hopp's surreptitious video recording of the repeated sexual battery of Gray without her knowledge and consent was a basis for the infliction of emotional distress. She also alleged that Hopp might distribute or disseminate the flash drive showing hours upon hours of Hopp engaging in repeated sexual activity with Gray without her consent, thereby inflicting emotional distress. Count III sought injunctive relief, stating that she had "a clear and ascertainable right in need of protection with regards to" the videos and other materials and that there are "no conceivable rights or lawful use that Hopp would have in such material and any rights in such material."

¶ 15    Gray subsequently filed a request for production pursuant to Supreme Court Rule 214 (eff. July 1, 2018). Included in Gray's definition of "Documents" was "any and all electronically stored information (ESI) which includes electronic videos, photographs, images, notes, drafts, copies, emails (in any file, including 'sent,' 'deleted,' and other computer storage locations, including jump drives, flash drives and zip drives), ***." The request included "digital or analog videos and photographs in any format." Gray eventually filed a motion to compel the production of the "flash drive" that allegedly contained the "hours and hours" of video footage.

¶ 16 Hopp filed a motion to dismiss pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2016)). Hopp again argued that the general release from the MSA, incorporated into the judgment of dissolution, barred allegations of any conduct that occurred during the marriage. Hopp included in the motion a request for Rule 137 sanctions. No affidavits were attached to the motion. Hopp also filed a motion to enforce the MSA and the judgment of dissolution, deny Gray's discovery requests, and for Rule 137 sanctions.

¶ 17 On December 3, 2020, the trial court denied the motion to compel and stayed any further filings and discovery. On May 3, 2021, the trial court granted Hopp's motion to dismiss. The court found that Gray knew about the recordings during the divorce proceedings, "yet missing from the pending complaint is *any allegation whatsoever* that (a) recordings were requested during discovery in the divorce proceedings, and (b) the Defendant failed to produce the same. With the ultra-contested proceedings here, these omissions can neither be inadvert nor accidental." (Emphasis in original.) Finding that the recordings were property of the parties, "[e]ntitlement was litigated and otherwise addressed in the divorce proceedings." The court found the litigation in this case "to be nothing more than [an] attempt to get at something the Plaintiff failed to address in the divorce proceeding." Therefore, Gray's amended complaint was dismissed with prejudice. Addressing the issue of Rule 137 sanctions, the court found that, while relief "appears to be warranted," the request "falls short of detailing what relief would be appropriate." The court denied that portion of the motion without prejudice.

¶ 18 In June 2021, Hopp filed a petition for attorney fees and costs pursuant to Rule 137 along with a motion for Rule 137 sanctions, arguing that Gray "continues to file pleadings on legal issues and facts that have already been adjudicated" and that Gray's pleadings and discovery requests "serve as a tactical weapon designed to harass Defendant." Hopp stated that he had incurred

attorney fees and costs of $39,000 and would provide an itemized breakdown of the fees at a future hearing.

¶ 19      After a non-evidentiary hearing, the trial court granted Hopp's motion in the amount of $19,500. This appeal followed.

¶ 20                       II. ANALYSIS

¶ 21      Gray first contends that the trial court erred in dismissing her amended complaint based on release and *res judicata*. Although Hopp brought his motion to dismiss under section 2-619.1, combining motions to dismiss brought under sections 2-615 and 2-619, the trial court clearly dismissed the first amended complaint pursuant to section 2-619, finding that the recordings were property of the parties and that "[e]ntitlement was litigated and otherwise addressed in the divorce proceedings."

¶ 22      Section 2-619.1 of the Code allows the movant to combine a section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 2018)) with a section 2-619 motion to dismiss (735 ILCS 5/2-619 (West 2018)). *Grassroots Collaborative v. City of Chicago*, 2020 IL App (1st) 192099, ¶ 21. A section 2-615 motion attacks the legal sufficiency of a plaintiff's claim whereas a section 2-619 motion admits the legal sufficiency of a claim but asserts affirmative defenses or other matters that avoid or defeat it. *Id*. We review *de novo* a lower court's judgment on a section 2-619.1 motion, and we may affirm the court's judgment on any basis in the record, regardless of whether the court relied on that basis or whether its reasoning was correct. *Id.*

¶ 23      A motion to dismiss under section 2-619 admits the legal sufficiency of the complaint but asserts some affirmative matter that avoids or defeats the plaintiff's claim. *Johannesen v. Eddins*, 2011 IL App (2d) 110108, ¶ 15. "The 'affirmative matter' must be apparent on the face of the complaint or supported by affidavits or certain other evidentiary materials." *Epstein v. Chicago*

*Board of Education*, 178 Ill.2d 370, 383 (1997). When considering a section 2-619 motion, we must accept as true all well-pleaded facts in the complaint, as well as any inferences that may reasonably be drawn in the plaintiff's favor. *Doe v. University of Chicago Medical Center*, 2015 IL App (1st) 133735, ¶ 35. Because the allegations of the complaint must be taken as true, the "affirmative matter" presented by the movant must do more than simply refute a well-pleaded fact in the complaint. *Id.*, ¶ 39.

¶ 24 The defendant bears the initial burden of establishing that the affirmative matter defeats the plaintiff's claim. *Id.*, ¶ 37. If the defendant satisfies this burden, the burden then shifts to the plaintiff to demonstrate that the proffered defense is unfounded or requires the resolution of a material fact. *Id.* If the plaintiff fails to carry this shifted burden of going forward, the complaint will be dismissed. *Id.*

¶ 25 Dismissal of a complaint under section 2-619 is appropriate only where the plaintiff can prove no set of facts that would support a cause of action. *Id*. We review *de novo* a section 2-619 dismissal. *Hernandez v. Lifeline Ambulance, LLC*, 2020 IL 124610, ¶ 14. Under this standard of review, we owe no deference to the trial court's ruling and are free to disregard its judgment and substitute our own. *Miller v. Hecox*, 2012 IL App (2d) 110546, ¶ 29.

¶ 26 Hopp asserted that Gray's claims were "barred by the affirmative matters contained in the Marital Settlement Agreement pursuant to 735 ILCS 5/2-619(a)(9)." Further, he argued that the court had already adjudicated the issues raised in the amended complaint when it dismissed Gray's initial complaint and denied her motion to reconsider; thus, pursuant to Section 2-619(a)(4) of the Code, the doctrine of *res judicata* barred plaintiff's amended complaint. The trial court found that the MSA "included a comprehensive general and mutual release. *** The release included everything." Further, the court quoted paragraph 26 of the amended complaint, which stated:

"During the course of their marriage, Gray recalled several occasions wherein Hopp sought to record the two of them in sexual activity. Gray did not know whether Hopp preserved, deleted, or modified these recordings after they were recorded or at the time of their divorce."

According to the court:

"[Gray] knew about these during the contentious divorce proceedings, yet missing from the pending complaint is *any allegation whatsoever* that (a) recordings were requested during discovery in the divorce proceedings, and (b) the Defendant failed to produce the same. With the ultra-contested proceedings here, these omissions can neither be inadvertent nor accidental." (Emphasis in the original.)

The court found that the omission of these facts:

"obviate the need for this litigation. Ultimately, the recordings were property of the parties. Entitlement was litigated and otherwise addressed in the divorce proceedings. As such, the Court again agrees with the Defendant that this litigation should end, and moreover, in consideration of what has been pled over four years into this case, should not have been brought. With all of the litigation over the recordings in this case, the litigation in this case is found to be nothing more than attempt to get at something the Plaintiff failed to address in the divorce proceeding."

¶ 27    In its written order granting Hopp's motion to dismiss, the trial court never mentioned, let alone analyzed, Gray's causes of action. The court went immediately to the issue of the "comprehensive general and mutual release" contained in the "comprehensive marital settlement agreement." It was the existence of this affirmative matter that was the basis for the court's judgment. While the court never explicitly stated the statutory basis for granting the motion, its

written order can only be read as granting the motion pursuant to section 2-619. As a section 2-619 motion to dismiss "admits the legal sufficiency of the complaint" (*Johannesen*, 2011 IL App (2d) 110108, ¶ 15), we must assume that the trial court did not find that Gray had failed to state sufficient causes of action in her amended complaint, and we need not address Hopp's section 2-615 contentions.

¶ 28    In his motion to dismiss, Hopp argued:

> "735 ILCS 5/2-619(a)(4) allows a Defendant to seek involuntary dismissal when a cause of action is 'barred by a prior judgment.' [Citation.] The principals of *res judicata* bar re-litigating all issues already decided by a prior judgment of the court. See id. As outlined above, the Amended Complaint is actually Plaintiff's *third* attempt to have this Court change its mind on the same issues, the same facts, the same causes of action, and the same law. Accordingly, Defendant prays this Court will dismiss, with prejudice, Plaintiffs Amended Complaint pursuant to 735 ILCS 5/2-619(a)(4)." (Emphasis in original.)

¶ 29    A case is properly dismissed pursuant to section 2-619(a)(4) if the cause of action is barred by a prior judgment under the doctrine of *res judicata*. 735 ILCS 5/2-619(a)(4) (West 2018). Under this doctrine, a *final judgment* on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between those same parties involving the same cause of action. *River Park, Inc. v. City of Highland Park*, 184 Ill.2d 290, 302, (1998). However, an order that dismisses a complaint but grants leave to replead is not a final order for purposes of *res judicata* until the trial court enters an order dismissing the suit with prejudice. *Hernandez v. Bernstein*, 2011 IL App (1st) 102646, ¶ 9.

¶ 30    Here, Hopp is arguing that this trial court's prior orders dismissing Gray's original complaint and denying her motion to reconsider bar Gray's amended complaint. Obviously, this is not so. The trial court's dismissal was not a final order, as it granted leave to file the amended complaint. Section 2-619(a)(4) provides no basis for dismissal here.

¶ 31    Gray then argues that the trial court erred in dismissing her amended complaint pursuant to section 2-619(a)(9). In his motion to dismiss, Hopp asserted that Gray's claims were "barred by the affirmative matters contained in the Marital Settlement Agreement pursuant to 735 ILCS 5/2-619(a)(9)." The MSA contained the "MUTUAL AND GENERAL RELEASE" by which the parties agreed to:

"relinquish, release, waive and forever quitclaim and grant to the other***all rights of support, maintenance, dower, inheritance, decent [*sic*], distribution, community interest and all other right, title, claim, interest, and estate as HUSBAND and WIFE, widow or widower, or otherwise by reason of the marital relations existing between the said parties hereto, under any present or future law, or which he or she otherwise has or might have or be entitled to claim in, or against the-property and assets of the other, real, personal or mixes [*sic*], or his or her estate ***."

The parties also agreed that each should "retain sole and exclusive right, title and interest, respectively, in and to each and all of the property in his or her respective possession;" this applied to "all choses in action, real estate, personalty, interests as beneficiaries of trusts, pensions or retirement or profit-sharing plans, checking and savings accounts, royalties, bonds, stocks and securities."

¶ 32    Illinois courts define a release as "a contract whereby one party abandons claims against another, and its interpretation is governed by the principles that govern contract law." *Johnson v.*

*Maki & Assocs.*, 289 Ill. App. 3d 1023, 1026 (1997). Courts must interpret the provisions of a contract to give effect to the parties' intent. *Virginia Sur. Co., Inc. v. Northern Ins. Company of New York*, 224 Ill. 2d 550, 556, (2007). The parties' intent can be determined through the language of the release, as well as the circumstances surrounding its execution. *Carlile v. Snap-on Tools*, 271 Ill. App. 3d 833, 838 (1995). General words of release are restrained in their effect by the specific recitals contained in the document. *Janowiak v. Tiesi*, 402 Ill. App. 3d 997, 1014 (2010). A release is to be strictly construed against the benefitting party and must spell out the intention of the parties with great particularity. *Id.* No form of words prevents a reviewing court from inquiring into surrounding circumstances to determine whether a release was fairly made and accurately reflects the parties' intentions. *Carlile*, 271 Ill.App.3d at 839.

¶ 33    Clearly, the intent of the parties evinced in the release contained in the MSA does not include the release of Gray's allegations of battery and intentional infliction of emotional distress. The release specifically refers to waiving "all rights of support, maintenance, dower, inheritance, decent, distribution, [and] Community interest" in financial and property issues arising "by reason of the marital relations existing between the said parties hereto." This release can in no way be read to include issues of tortious activity, whether occurring during the marriage or after. This limited interpretation is supported by the circumstances under which the parties entered into the release—the dissolution of their marriage. A release of claims to property awarded to an ex-spouse in the dissolution of marriage is commonplace and expected; a release of claims for tortious actions committed by an ex-spouse is not so commonplace. Strictly construing the language of the release against Hopp (see *Janowiak*, 402 Ill. App. 3d at 1014), we cannot infer that such a specific release of tort claims would be included in a general release involving financial and property issues in the

dissolution of a marriage. Thus, the dismissal of counts I and II of the amended complaint pursuant to section 2-619 was erroneous.

¶ 34    We also conclude that dismissal of count III (seeking injunctive relief) pursuant to section 2-619 was similarly erroneous. Again, we must accept as true all well-pleaded facts in the complaint, as well as any inferences that may reasonably be drawn in the plaintiff's favor. *Doe*, 2015 IL App (1st) 133735, ¶ 35. In her verified amended complaint, Gray alleged that, during the pendency of the divorce proceedings, she had no knowledge that Hopp had recorded, or caused someone else to record, the "hours upon hours" of sexual activity between them or that Hopp had maintained or modified the videos of the several instances in which he sought to record the two of them engaged in sexual activity, and she had no knowledge of the existence of such recordings. Gray alleged that she learned of the existence of the "hours upon hours of video" in May 2015, *after* the 2014 judgment of dissolution had been entered. She also alleged that Hopp battered her and engaged in repeated sexual activity with her without her consent and recorded that activity without her knowledge and consent. Hopp filed his motion to dismiss but did not attach any affidavits addressing these allegations.

¶ 35    Accepting Gray's well-pleaded facts as true, the general release contained in the MSA neither insinuated nor addressed the existence of these recordings or the flash drive, let alone decided which party was entitled to them. The trial court misread Gray's amended complaint. The court focused on the "several occasions" in which Gray alleged that Hopp sought to record the two of them in sexual activity, stating "[Gray] knew about these during the contentious divorce proceedings." However, there is nothing in the record to support the conclusion that Gray knew about the "hours upon hours of video." Neither the MSA nor the incorporated four-page list of "lost" property makes any reference to such extensive recordings of sexual activity. Hopp did not

attach any affidavits to his motion to dismiss, let alone an affidavit averring that Gray had knowledge of the recordings *before* the dissolution judgment. Gray's knowledge of the existence of these recordings is an issue of fact. If a defendant wishes to challenge the factual sufficiency of a plaintiff's claim, the summary judgment motion is the proper vehicle. *Barber-Colman Co. v. A & K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1073 (1992).

¶ 36 "It is well settled that where the releasing party was unaware of other claims, general releases are restricted to the specific claims contained in the release agreement. *Janowiak*, 402 Ill.App.3d at 1014. However,

> "where both parties were aware of an additional claim at the time of signing the release, courts have given effect to the general release language of the agreement to release that claim. [Citation.] Therefore, a release will not be construed to defeat a valid claim that was not within the contemplation of the parties at the time the agreement was executed, and general words of release are inapplicable to unknown claims. [Citation.]" *Id.*

¶ 37 Accepting as true Gray's well-pleaded fact that she had no knowledge of the hours of recorded and saved video, we conclude that the general release contained in the MSA does not defeat Gray's claim for injunctive relief. Therefore, we reverse the trial court's grant of dismissal of that count.

¶ 38 Gray next contends that the trial court erred in denying her motion to compel production of the flash drive. While the scope of permissible discovery is broad, it is not unlimited. *Y-Not Project, Ltd. v. Fox Waterway Agency*, 2016 IL App (2d) 150502, ¶ 43. A court must exercise its discretion to balance the needs of truth and excessive burden to the litigants. *Id.* This court will not disturb a discovery order absent an abuse of discretion. *Id.* A trial court abuses its discretion only when its decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person

would agree with it. *Doe v. Readey*, 2023 IL App (1st) 230867, ¶ 34. To determine whether a trial court has abused its discretion, a reviewing court looks to the trial court's stated justification for its decision. *Id.*

¶ 39 Gray argues that the trial court abused its discretion in denying her motion because granting the motion would have allowed her to respond to Hopp's motion to dismiss. However, Gray's four-sentence argument does not direct us to the court's written order or oral ruling denying the motion or even address the court's rationale. Further, the argument does not explain how granting the motion could have aided her response to Hopp's motion to dismiss. We cannot find an abuse of discretion on such a flimsy and deficient argument. We find no error here.

¶ 40 Gray next contends that the trial court erred in awarding Hopp sanctions pursuant to Supreme Court Rule 137. Because we reverse the trial court's dismissal of Gray's amended complaint, we also vacate the trial court's award of sanctions. While we need not address Gray's claims of error in the award, we will, in the interests of judicial economy, address one such claim.

¶ 41 Rule 137 requires that, "[w]here a sanction is imposed under this rule, the judge shall set forth with specificity the reasons and basis of any sanction so imposed either in the judgment order itself or in a separate written order." SCR 137(d), eff. Jan. 1, 2018. Such findings by the trial court "are necessary to enable a reviewing court to make an informed and reasoned decision as to the propriety of a sanction order and they form the predicate to the deference that reviewing courts accord the trial court's exercise of its discretion in such matters." *In re Marriage of Adler*, 271 Ill. App. 3d 469, 476 (1995).

¶ 42 Here, the trial court's written order stated only that Hopp's motion for sanctions was "granted in part for reasons stated and sanctions in the amount of *$19,500* against Mallory Gray and Michael Tannen." This violates both the spirit and the letter of Rule 137(d). If sanctions are

sought and awarded after proceedings on remand, we would expect a written order specifically setting forth the reasons and basis for the sanctions imposed.

¶ 43    Gray requests that, as we remand this case for further proceedings, we exercise our discretion to remand the case to a different trial judge, pursuant to Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994). Gray's two-sentence argument is undeveloped, woefully deficient, and we determine this issue is forfeited.

¶ 44                         III. CONCLUSION

¶ 45    For these reasons, the judgment of the circuit court of McHenry County is affirmed in part, reversed in part, and vacated in part, and the cause is remanded for further proceedings.

¶ 46    Affirmed in part, reversed in part, vacated in part, and remanded.